## Loan to School District of Philadelphia

MARGIOTTI, Attorney General, January 25, 1938.—We have your request to be advised regarding your authority, as Governor of the Commonwealth of Pennsylvania, to pledge the credit of the Commonwealth as security for a loan of $1,000,000, which money is to be lent to the School District of Philadelphia in order to supply a deficiency in its revenue.

You inquire whether that section of the Constitution which permits the creation of a debt to supply casual deficiencies in revenue in the amount of $1,000,000 would authorize such action on your part.

You further inquire whether, if the Commonwealth cannot render assistance to the School District of Philadelphia in the manner suggested, there is any other way in which the Commonwealth could meet the emergency which exists.

Your inquiry arises out of the fact that the School District of Philadelphia is in a serious dilemma, due to lack of funds, which shortage seriously impairs the proper performance of its functions.

We are advised by counsel for the School District of Philadelphia that the sum of $250,000 would take care of, and supply, those items which most vitally affect the children attending school within the said school district.

The section of the Constitution to which you refer is section 4 of article IX, which provides, in part, as follows:

"No debt shall be created by or on behalf of the State, *except to supply casual deficiencies of revenue,* repel invasion, suppress insurrection, defend the State in war, or to pay existing debt; *and the debt created to supply deficiencies in revenue shall never exceed, in the aggregate at any one time, one million of dollars.*" (Italics ours.)

The above section of the Constitution authorizes the creation of a debt to supply deficiencies in revenue, provided that such debt shall never exceed, in the aggregate, at any one time, $1,000,000.

The above section of the Constitution was construed in Commonwealth ex rel. v. Liveright, etc., et al., 308 Pa. 35 (1932), in which the court stated as follows, at page 66:

*"Under the Constitution, neither the legislature, the officers or agents of the State, nor all combined, can create a debt or incur an obligation for or on behalf of the State, except to the amount and in the manner provided for in the fundamental law. This section was intended to restrict legislative acts which incurred obligations or permitted engagements on the credit of the State beyond revenue in hand or anticipated through a biennium, and establishes the principle that we must keep within current revenue and $1,000,000. . . . The control of the state's finances is entirely in the legislature, subject only to these constitutional limitations; and, except as thus restricted, is absolute."* (Italics ours.)

A casual deficiency in revenue means one arising from some unforeseen or unexpected cause, or from an insufficiency of funds to meet some unforeseen and necessary expense, and does not include the borrowing of money to meet current expenses. The word "casual" means that which happens by accident: Williams, Admx., v. Sumter County, 21 Ga. App. 716, 94 S. E. 913.

A casual deficiency occurs only when the State's revenue is insufficient to meet the expenses of the State for a fiscal period. A loan to take care of a casual deficiency is not authorized because the funds on hand are not sufficient to meet current expenses. Therefore, the only type of deficiency which was contemplated by the framers of the Constitution, and which can be supplied by a loan, is a deficiency which arises by reason of an unanticipated shortage in revenue to provide for the regular expenses of the State Government.

It is clear that the authority of the Commonwealth to incur a debt in the amount of $1,000,000 to supply casual deficiencies in revenue is confined strictly, as to method.

A deficiency can be accomplished only by appropriation of the legislature. The type of debt you suggest obviously would not be a debt to supply a casual deficiency, but would be a debt which was deliberately created. A deficiency which is deliberately created is not one which occurs accidentally.

Even though the Constitution could be construed to authorize the borrowing of moneys up to the sum of $1,000,000, under the authority granted by section 4 of article IX, nevertheless, this could be accomplished only through legislative action. This was clearly set forth in Montgomery, Jr., v. Martin et al., 294 Pa. 25 (1928), in which the court stated as follows, at page 33:

"When the constitutional provision against State debts was adopted, the people erected a wall between their inherent right to borrow money for state purposes and their agent, the legislature, *which must authorize the actual borrowing.* This structure consists of the restrictive provision that 'no debt shall be created.' In it, however, the people left five gates, as it were, through which, by way of exception to the restriction, the legislature could pass and impose on them certain money obligations. These gates we may mark respectively, 'Except to [1st] supply casual deficiencies in revenue, [2d] repel invasion, [3d] suppress insurrection, [4th] defend the State in war, [5th] pay existing debts.' " (Italics ours.)

Thus, we have a situation where the legislature cannot, by statute, directly and intentionally create a debt. It only can borrow to supply a casual deficiency after such deficiency has occurred. We have the further situation that even though the legislature could create a debt, it could do so only by legislative enactment. This would require the legislature to be called into session. As has been pointed out, such a call would be futile, because of the legislature's lack of authority to create a debt.

If such a debt could be incurred without legislative action, before the proceeds of such debt could be utilized,

an appropriation act would be required, which also would necessitate the convening of the General Assembly. Section 16 of article III of the Constitution prescribes that no money shall be paid out of the State Treasury except upon appropriations made by law.

Even though all other requirements were met, the State could not lend money to any political subdivision or other governmental instrumentality. Before the Commonwealth could engage in the business of lending money, a constitutional amendment would be necessary.

Therefore, it is clear that there is no authority in you, in any other public officer, or in the General Assembly, to borrow the sum of $1,000,000 to be, in turn, lent to the School District of Philadelphia under the authority of that portion of section 4 of article IX of the Constitution of the Commonwealth of Pennsylvania which authorizes the incurring of a debt in the sum of $1,000,000 to supply casual deficiencies in revenue.

In answer to your second inquiry, I am pleased to advise that a method exists whereby funds can be provided for the School District of Philadelphia. At the last session of the legislature, Act no. 86-A was enacted, which made an appropriation of $2,000,000 to the Department of Public Instruction for financially handicapped and distressed school districts. At least $1,500,000 of that appropriation are still available. Obviously, the School District of Philadelphia would fall within the meaning of the term "financially handicapped and distressed school districts". Therefore, there is no doubt that that appropriation is available for the relief of the School District of Philadelphia and is a solution of its problem. This is a matter for the discretion of the Superintendent of Public Instruction.

Philadelphia has at least one fifth of the population of the Commonwealth of Pennsylvania. It is only fair and proper that in this great emergency the School District of Philadelphia receive its equitable share of the appropriation referred to above.

I would recommend that there be allocated immediately to the School District of Philadelphia the sum of $250,000 to meet its most urgent need, and that such other sum be made available to that school district as will not prejudice the rights of the other financially handicapped and distressed school districts of the Commonwealth.

You are, therefore, advised that there is no authority in you, as Governor, to borrow money under any provision of the Constitution or the laws of this Commonwealth.

You are likewise advised that moneys cannot be paid out of the State Treasury without a specific appropriation therefor.

You are further advised that, by virtue of the Act of July 2, 1937 (no. 86-*A*), there is available an appropriation for financially handicapped and distressed school districts, from which appropriation funds can be allocated to the School District of Philadelphia to relieve the present emergency which exists in that school district.